Washington, Ch. J.,
delivered the following opinion of the court: — *This is the claim of William French to a part of the cargo of the Frances, shipped by James Auchincloss, of Paisley, in Groat Britain, to A. & J. Auchincloss, of New York, on their account and risk. By the corresjiondence between the consignor and consignees, which was exhibited to the court below, under an order for further proof, it is somewhat doubtful, whether these goods were to be sold as the property of the consignor, or of the consignees. In the letter from the former to A. Auchincloss, dated the 17th of July 1812, he says, “You will lose no time, to transmit, immediately on the receipt of the invoice by the Fanny, as well as by the Frances, to the full amount of the invoices ; as thereby, and no other way, is your credit and John’s to be restored here. Also remit, as I have often told you, to clear off your old debt: and, for God’s sake, let us have no more failing in the family. You will observe, that the goods per Fanny and Frances are principally bought upon a credit of three, four and five months ; this the consequence of failing.”
In another letter, of the same date, from the same to the same, he says, “ By this ship, the Frances, I have shipped you fourteen boxes of different kinds of goods, which I beg you will lose no time to dispose, as by early remittances, you will undoubtedly strengthen your credit.” In another part of this letter, he says, “ I beg you will lose no time to remit largely, say 3 or 4000 pounds. Remember the old cash account with the Paisley Banking Company.” These letters, so far as they throw light upon this transaction, intimate very strongly that A. & J. Auchincloss were to dispose of these’ goods upon their own account, and as the purchasers of them. But to produce a change of property from the shipper to the consignee, it was essentially necessary, that the goods should have been sent, in consequence of some contract between the parties by which the one agreed to sell, and the *229 *362] other to buy. Had the language of these letters been more explicit than it is, to prove that the intention of the consignor was to vest the right of property in the consignee, it would not have been sufficient to effect such a change, until the goods were received, or some evidence given of the agreement of the consignee to take them on his own account. No order from A. & J. Auehincloss to the ^consignor of this cargo, authorizing the shipment of it, was produced, or offered to be produced, in the court below ; and this court, therefore, is warranted in believing that none such was ever given. Indeed, no interest whatever in these goods is asserted to have existed in A. & J. Auehincloss, but the same is claimed by William French, a citizen of the United States, who, under the order for further proof, produced, in support of his claim, a letter from himself to A. & J. Auehincloss, dated the 20th February 1812, in which he requests them to order from his friends in Scotland, a quantity of goods, enumerated in the letter, not to exceed 1000Í. sterling, to be shipped as soon as the orders in council should be revoked, and adding, that he should consider the goods at his risk, from the time they should be shipped ; also an invoice of these goods, sent by A. & J. Auehincloss to William French, together with a letter from them, dated the 20th of September 1812, advising him of the capture of the Frances, with the goods shipped on his account, and recommending it to him to take the necessary steps to vindicate his right to the property. This letter made its appearance in the court below, with the outer leaf, on which the post-mark would have been placed, had there been any, tom off. To do away with the suspicion which this circumstance might well excite, the affidavit of Darius Hodson was produced, in which he states that he forwarded this letter to the claimant, at Providence, having first torn off the outer leaf, with a view to lessen the rate of postage.
The affidavit of the claimant is added, which is fully to the purpose of supporting his interest in these goods, so far as his order to A. & J. Auchincloss can vest such an interest in him. But passing over those observations which might fairly be made upon the mutilated state of the letter from A. & J. Auehincloss to the claimant, and the suspicious manner in which that circumstance is attempted to be explained, it may be observed, that the claim of William French is in no respect stronger than if it had been made by A. & J. Auehincloss. Admit, that he wrote to A. & J. Auehincloss the letter of the 20th February 1812, and received from them that of the 20th of September, the inquiry still remains to be answered, where is the order *3631 ^or *shipment from A. & J. Auehincloss as the agent of the -* claimant? The truth is, that in whatever light this question is viewed, these goods were at the risk of the shippers, until they should be received by the consignee ; and consequently, were, by the capture, made good prize, as property belonging to the enemy.
Sentence affirmed.